EUGENE F. BRYCE *vs.* JACKSON DINERS CORPORATION.
ELSIE M. BRYCE *vs.* SAME.

MAY 20, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

328

FLYNN, C. J. These actions in trespass were brought by a husband and wife respectively as business invitees against the owner and operator of a diner to recover damages resulting from an alleged assault and battery committed by the defendant's servant. They were tried together before a jury in the superior court and at the conclusion of the testimony for plaintiffs the trial justice granted defendant's motion for a nonsuit in each case. From such decision each plaintiff prosecuted an exception to this court.

It appears in evidence that plaintiffs Eugene F. Bryce and his wife Elsie on the evening of November 25, 1950 entered the diner of the defendant corporation at the corner of Jackson and Westminster streets in the city of Providence to purchase refreshments. They occupied a booth and gave their orders to a waitress. The husband ordered a ham sandwich and coffee while the wife ordered a cheeseburger and coffee. After the food and beverage were served by the waitress, the wife tasted the cheeseburger and concluded it was tainted. She had her husband smell and sample it and he was of the same conviction. The waitress was then asked to take the cheeseburger back and to substitute a good one, which she refused to do. Thereupon the wife drank her coffee but left the cheeseburger, and the husband consumed his ham sandwich and coffee.

On the way out plaintiffs stopped at the cashier's desk, but the husband refused to pay the full check which included a charge for the cheeseburger. He stated that he would pay only for the edible food and drink. From that point the testimony, which is substantially all that appears with relation to the incident leading immediately to the alleged assault and battery, is as follows: "Q. Tell the Court and jury what happened after that? A. Well, this fellow came over and he says he was the night manager and he said: 'Are you going to pay for this?' And I said: 'No, I am not going to pay for this. It is not edible.' And he said: 'Well, I am sick and tired of this business.' My arm was full of packages and he took me and shoved me through the door. Mrs. Bryce said: 'Take your hands off him.' So, he took her and shoved her and the prints of his fingers were on her and he took her and shoved her to the outside main vestibule."

The plaintiff wife, later testifying as to what happened when she and her husband were at the cashier's desk, stated: "Well, he [the manager] insisted on him paying for the sandwich and my husband said that he wasn't going to pay for it and he said he was only going to pay for what was good. So, he shoved my husband out of the door and then he grabbed me and threw me. Q. Did he ask you to pay for the sandwich? A. Yes, he did, when he grabbed me and shoved me." She further testified: "Q. Now, the time that the night manager grabbed you by the arm, was anything said about your paying for the —— A. Yes, he wanted us to pay for the check and my sandwich. Q. And he asked you to pay for it? A. He said: 'Are you going to pay for this check?' "

The trial justice held in substance that there was no evidence of express or implied authority in the so-called night manager to perform the act resulting in the assault on plaintiffs. He therefore granted defendant's motion for a nonsuit in each case chiefly on the strength of the law

as stated in *Haining* v. *Turner Centre System,* 50 R. I. 481, which held that a master was not responsible for the negligent acts of a servant even if intended to further the master's business, unless the act of the servant was within the scope of his employment and within his express or implied authority.

The plaintiffs concede the general rule but they argue that the evidence, when viewed most favorably to them as must be done on these motions, raises a material issue of fact as to whether the assault was committed while the "night manager" was performing an act within the scope of his employment and within his implied authority. In support thereof they cite chiefly the cases of *Son* v. *Hartford Ice Cream Co.,* 102 Conn. 696, and *Welsh* v. *West Jersey & Seashore R.R.,* 42 A. 736 (N.J.L.), and cases in 39 C. J. §1509, p. 1309, following the text "where a servant is intrusted with the duty of collecting money due the master, an assault made by the servant to enforce payment is within the scope of his authority and the master is liable." See also 57 C.J.S., Master and Servant, §575, p. 343.

On the other hand defendant contends that the weight of authority does not ordinarily hold a master liable for the *willful* act of a servant, citing *Benton* v. *James Hill Mfg. Co.,* 26 R. I. 192, and *Evers* v. *Krouse,* 70 N.J.L. 653. It is argued substantially that the master's liability for such an act of the servant does not arise unless it is done by the servant in the line of his duty, within the scope of his employment, and at the time he is attempting to accomplish what he was employed to do. See *Lamm* v. *Charles Stores Co.,* 201 N. C. 134. The defendant urges that the scope of the servant's authority or duty was not shown and that the trial justice was correct in applying to the facts in the instant case the principle of law stated in *Haining* v. *Turner Centre System,* *supra.*

The law is generally established that in the absence of statute an employer is not responsible for a willful assault by an employee unless it is committed while performing

a duty in the course of his employment and by express or implied authority from the employer. However, in a proper case the law apparently may imply the authority to the servant so as to hold the master even though the act is one specifically forbidden by the master or is in violation of law. *Son* v. *Hartford Ice Cream Co., supra; Mason* v. *Jacot,* 235 Mass. 521; *Barnes* v. *Hampton,* 149 Va. 740.

The lack of uniformity in the decisions seems to arise, first, from attempts to state the principle upon which the authority is implied so as to impose such liability, and secondly, from efforts to apply the general rule to varying circumstances and facts. Many courts seem to consider such cases under the general doctrine of *respondeat superior,* although strictly speaking, in the absence of unusual circumstances, it is difficult to imply authority to commit an assault or to perform a criminal act. Other decisions seem to apply the principle of the maxim *facit per alium facit per se* so as to bind the master in a proper case. Still others, recognizing the difficulty of strictly applying either of those principles to certain types of cases which nevertheless demand some remedy, base the master's liability eventually on principles of public policy.

In our judgment the great growth in the method of doing business through others has forced courts to find of necessity some reasonable remedy without which a party might unjustly suffer a wrong. Thus there seems to have been imported into the law, as a matter of public policy, certain equitable principles in the interest of effecting substantial justice between two persons who are innocent of any actual wrongdoing but one of whom has made it possible for his servant to be in a position to commit a wrong upon the other.

In other words when the facts show that a servant has committed an assault upon an innocent invitee at the time of and as an incident to the execution of a duty which he was hired to perform, the necessary authority is implied by

operation of law so as to hold the master liable for the servant's tortious method of performing the duty delegated to him, even though the servant's act was willful and unauthorized or forbidden. In such circumstances the wrongful act is held to arise out of and in the course of employment and, unless it is so independent of the reasonable scope of his employment as to be the act of the servant alone, the master may be held to be responsible.

There is no difficulty in applying the rule where the nature of the duty is such that its performance would reasonably put the employer on notice that some force probably may have to be used in executing it. In that event the law implies the authority and holds the master responsible under the doctrine of *respondeat superior,* as, for example, in the case of *Rice* v. *Harrington,* 38 R. I. 47. On the other hand, it is understandable why the authority should not be implied where the injury is inflicted by a servant while performing an act that is not reasonably within the scope of his employment or authority, express or implied, as in cases like *Benton* v. *James Hill Mfg. Co.; supra,* and *Haining* v. *Turner Centre System, supra.*

Between these two extremes, however, there are incidents wherein the line of distinction becomes very fine and difficult to establish. The instant case is in that area. The defendant here obviously was not an insurer. The plaintiffs, however, were business invitees and on this evidence were not creating any disturbance or breach of the peace or otherwise provoking a forcible ejectment. The evidence as to the scope of the servant's employment and authority and as to the duties which he was performing at the time of the assault is meager. However, a view of such evidence most favorable to plaintiffs might support a reasonable inference by a jury that the so-called night manager in general was attempting to collect or was supervising the collection of money for food ordered and wholly or partially consumed. If that were found to be the fact, he would

appear to be acting within the reasonable scope of his employment, so far as it appears from this record. The question then would arise whether the assault took place at the time of and as an incident to the performance of an act or duty for which he was hired.

The defendant argues that the duty of the night manager to collect money for the food had completely ceased with the plaintiffs' refusal to pay; that his testimony clearly indicates that the assault took place thereafter and was not a part of the performance of that act or duty; that the ejectment of plaintiffs was not reasonably connected as an incident to his collecting, or supervising the collection of, the food check; and that it was consistent only with a finding that the assault was committed by the servant in satisfying his personal feeling and was not the act of his employer.

If the latter were the only reasonable conclusion the decision of the trial justice would be correct. But the instant motion must be considered without regard to the weight of the evidence and credibility of the witnesses. If the evidence is considered most favorably to plaintiffs it would be possible for a jury to infer that the whole episode was a short, continuous transaction whereby the servant was attempting to collect money for the food check; that he was then performing a duty reasonably within the scope of his employment; and that the assault was committed at the time of and as an incident to the performance of that duty, even though the method was wrongful and not expressly authorized. If in the circumstances such an inference were to be found as a fact, then under the weight of the precedents above referred to the law would imply the authority to hold the master liable. See also *Rappaport* v. *Rosen Film Delivery System, Inc.,* 127 Conn. 524.

The plaintiff's exception in each case is sustained, and each case is remitted to the superior court for a new trial.

*Charles A. Curran,* for plaintiffs.

*S. Thomas Cotroneo,* for defendant.