337 F.2d 93
 J. Patrick DOWD, Appellant,
v.
Bryan WEBB, Margaret H. Webb, Charles J. Hesse, Jr., Michael J. Stavola, Stanley Savage, John Doe, Individuals and Beacon Stables, a Partnership.
J. Patrick DOWD, Appellant,
v.
Stanley SAVAGE, Charles J. Hesse, Jr., Michael J. Stavola, Bryan Webb, and Margaret H. Webb, Individuals, and Beacon Stables, a New Jersey Partnership.
 No. 14680.
 No. 14681.
 United States Court of Appeals Third Circuit.
 Argued April 23, 1964.
 Decided October 8, 1964.
 
 Lee A. Holley (Holley & Kroner, Orange, N. J., Robert B. Kroner, Orange, N. J., of counsel, on the brief), for appellant.
 Samuel A. Larner, Newark, N. J. (Budd, Larner & Kent, Newark, N. J., on the brief), for defendants-appellees, Charles J. Hesse, Jr., Michael J. Stavola and Beacon Stables.
 Klatsky & Himelman, Red Bank, N. J., Arthur P. Siegfried, Red Bank, N. J., of counsel, for appellee Savage.
 Before KALODNER, FORMAN and SMITH, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 These actions, arising out of an assault by the defendant, Bryan Webb, upon the Plaintiff, J. Patrick Dowd, with a four-pronged pitchfork, inflicting severe injuries later detailed, were brought in the District of New Jersey. Dowd is a citizen of Connecticut. Webb is a citizen of New Jersey. The other defendants, Stanley Savage, and Charles J. Hesse, Jr. and Michael J. Stavola, trading as Beacon Stables, a New Jersey partnership, are also citizens of New Jersey. Jurisdiction is founded upon diversity of citizenship.
 
 
 2
 The assault in question was committed in Rhode Island, and under the New Jersey Conflicts of Law rule Rhode Island law is applicable. Marshall v. George M. Brewster & Son, Inc., 37 N.J. 176, 180 A.2d 129, 95 A.L.R.2d 1153 (1962).
 
 
 3
 At trial, the court dismissed as to Hesse, Stavola and Beacon Stables at the close of the plaintiff's case, and as to Savage at the close of all of the evidence. A judgment of default was entered against Webb in the amount of $18,677.00.[1]
 
 
 4
 The plaintiff prosecutes these appeals claiming that the complaints against Hesse, Stavola, Beacon Stables and Savage were erroneously dismissed, and that the amount of the verdict against Webb was inadequate.
 
 
 5
 The facts pertaining to the dismissed actions, viewed most favorably to the plaintiff, are as follows:
 
 
 6
 The assault occurred on March 6, 1961, at Lincoln Downs Race Course in Lincoln, Rhode Island. Webb was a race horse trainer. He operated what he termed a "public stable", i. e., one in which he trained horses for more than one owner. He employed his own men to do the work and his foreman supervised it. He received $10.00 per day for training a horse plus 10 per cent of the horse's purses, if any. His services included feeding, caring and entering the horses in such races as he thought advisable. The owner paid for transportation, veterinary fees, jockey fees, blacksmith fees and his own license fee. Webb made all decisions concerning the services rendered. All equipment used was owned by him or leased to him.
 
 
 7
 Webb was assigned 14 stalls by the Lincoln Downs Race Course and he permitted Bernard Dowd, brother of the plaintiff, to use one of them to stable his horse. In return Bernard was to help Webb with his work. The remaining stalls were used by Webb to house horses trained by him, including those wholly or partly owned by the other defendants.
 
 
 8
 On the morning of March 6 Bernard came to the stables with the plaintiff who was then performing odd jobs around the stable area. Bernard noticed another groom rubbing down two horses assigned to him. When he sought to ascertain the reason from Webb, the latter expressed dissatisfaction with his work. Webb said that he had three horses coming in and required the stall allotted to Bernard. Bernard protested that he had "no place to go". Webb, using "vile language", grabbed Bernard's lapel or jacket, and said, "If you two so and so's don't get out of here and get your horse out of here I am going to knock the stuff out of both of you." The plaintiff said, "If you think you can do that, step in the stall here with me." As the plaintiff turned toward the stall, Webb stabbed him in the face with a pitchfork, blinding him in one eye, fracturing his nose, destroying his dental bridgework, and lacerating his face.
 
 
 9
 The plaintiff premises his claim of liability against the other defendants on an alleged master-servant relationship between them and Webb, as their trainer. He contends that Savage and Webb were partners in the ownership of certain horses trained by Webb at Lincoln Downs; and that Webb's acts are imputable to Savage under partnership law.
 
 
 10
 At trial, Hesse and Stavola (as well as Beacon Stables) sought dismissal on two grounds: (1) that no evidence of a master-servant relationship had been presented, and (2) that assuming a master-servant relationship, Webb's acts were not pursuant thereto. Savage urged that there was insufficient evidence to go to the jury on the question of his alleged partnership with Webb; that no master-servant relationship was shown to exist, and that Webb's acts were outside the purview of either of these alleged relationships.
 
 
 11
 At the close of the plaintiff's case the trial judge granted the motion of Hesse, Stavola and Beacon Stables to dismiss the complaint insofar as they were concerned.
 
 In granting the motion the court stated:
 
 12
 "I don't think that there is one iota of evidence here which would justify the jurors in finding a principal-servant relationship, employer-employee relationship between Hesse, Stavola and Beacon Stables and, on the other hand, Webb, employee. I don't think there is one iota of evidence that would justify such a finding of fact. * * * In my judgment, the evidence here establishes independent contractor and no indicia of employer-employee relationship." Pages 36, 37, N.T., June 11, 1963.
 
 
 13
 At the close of all the evidence the trial judge dismissed as to Savage. In so doing he stated:
 
 
 14
 "I think this motion should be granted for the very same reasons I granted the motion in Hesse and Beacon. I think we have absolutely the same handing over to an independent contractor of this horse, and the same degree or absolutely void in this owner, Mr. Savage, an absolute void as to any control he had on the independent operation of the training and racing, transporting, housing, feeding, and everything else of these particular horses owned in part by Mr. Savage. And that is my judgment and I will dismiss the case against Mr. Savage." Page 53, N.T., June 11, 1963.
 
 
 15
 On this appeal the plaintiff contends that the trial court committed prejudicial error in refusing to admit into evidence certain documents which tended to show an alleged master-servant relationship between Hesse, Stavola and Beacon Stables, and Webb; and that in any event there was sufficient evidence of agency or employment to carry the case to the jury.
 
 
 16
 We are of the opinion that the trial judge properly dismissed as to all of Webb's co-defendants, because Webb's act was a clear departure, as a matter of law, from both the alleged employment and partnership relationships, even assuming that either existed.
 
 
 17
 The general law applicable to the liability of a master for the acts of his servant is similarly applicable to the liability of one copartner for the acts of the other. Vrabel v. Acri, 156 Ohio St. 467, 103 N.E.2d 564, 30 A.L.R.2d 853 (1952); Prosser on Torts, § 65, p. 363 (1955); 68 C.J.S., Partnership § 168, p. 616. Under Rhode Island law, here applicable, an act must be within the general type of service for which the servant is employed. Haining v. Turner Centre System, 50 R.I. 481, 149 A. 376 (1930). Generally, unless there is authority, either express or implied, to use force, an employer is not responsible vicariously for a wilful assault by his employee upon another. Labossiere v. Sousa, 87 R.I. 450, 143 A.2d 285 (1958); Bryce v. Jackson Diner Corp., 80 R.I. 327, 96 A.2d 637 (1953). But if a servant commits an assault upon an innocent invitee of his master, incident to the execution of his duties, the master may be held liable. See Bryce v. Jackson Diners Corp., supra. Thus, if a servant is entrusted with the duty of collecting money for his master and in doing so uses inordinate force, liability may follow. See Bryce v. Jackson Diners Corp., supra. Underlying the imputation of liability to the master in this type of case is the basic policy to effect "substantial justice between two persons who are innocent of any actual wrongdoing but one of whom has made it possible for his servant to be in a position to commit a wrong upon another." Bryce v. Jackson Diners Corp., 96 A.2d 640. As the Rhode Island Supreme Court further made clear in Bryce, at p. 640:
 
 
 18
 "[W]hen the facts show that a servant has committed an assault upon an innocent invitee at the time of and as an incident to the execution of a duty which he was hired to perform, the necessary authority [to use force] is implied by operation of law so as to hold the master liable for the servant's tortious method of performing the duty delegated to him, even though the servant's act was willful and unauthorized or forbidden." (emphasis added).
 
 
 19
 The sum of the Rhode Island decisional law is that where a wilful tort of a servant is not merely a "frolic of his own" but occurs in relation to his master's business, then the master will be responsible for his wilful assault upon another if there is an express authorization to use force, or if it can be implied.
 
 
 20
 In the instant case there is absent an iota of evidence of either an express or implied authority to use force.
 
 
 21
 In Labossiere v. Sousa, supra, it was held that "the nature of the duties of a waitress and hostess are not such that an employer might reasonably be put on notice that some force probably might have to be used in carrying out such duties." 143 A.2d 287. Here, assuming that an employment or partnership relationship existed it cannot by any stretch of the imagination be said that the nature of Webb's work as a trainer of horses might possibly require the use of force.
 
 
 22
 On the score of the plaintiff's complaint that the damages allowed to him were so inadequate as to compel a new trial, we need only say that while the amount might well have been much higher we cannot say that the trial judge abused his discretion in denying a new trial on the ground of inadequacy of damages. Sinovich v. Erie Railroad Company, 230 F.2d 658, 660 (3d Cir. 1956). As we have time and again held, the amount of damages allowed by the trier of the facts "is not one for an appellate court to interfere with unless the result is shocking." McGraw v. Monongahela Connecting Railroad Co., 3 Cir., 285 F.2d 731, 732 (1960); Thomas v. Conemaugh & Black Lick Railroad Company, 3 Cir., 234 F.2d 429, 434 (1956).
 
 
 23
 Here the jury's verdict did not "shock of the conscience" of the trial judge nor can we say that it shocks ours. In a "letter-memorandum denying a new trial" on the ground of inadequacy of damages the trial judge stated:
 
 
 24
 "In regard to the verdict in the amount of $18,677.00 returned by the jury, I do not agree that it is `so shockingly low as to illustrate that the jury did not function properly'. Except for the elements of pain and suffering, permanent eye injury, and medical expenses, there was little evidence prepared or presented on the issue of damages. Moreover, the plaintiff testified that in 1962, the year following the accident, he worked more than he had in 1960. * * * It is my conclusion that I have no right under the facts of this case to substitute my judgment for that of the jurors."
 
 
 25
 For the reasons stated the Judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 It must here be noted that the District Court in the Judgment entered on June 14, 1963, following the jury's verdict and its denial of plaintiff's motion for a new trial based on inadequacy of damages allowed by the jury, entered judgments in favor of Webb's co-defendants and against the plaintiff