Keith ENSEY

v.

Edmond S. CULHANE, Jr., Superintendent of the Rhode Island State Police, and Paul J. Tavares [1], Treasurer of the State of Rhode Island.

No. 97–642–M.P.

Supreme Court of Rhode Island.

March 30, 1999.

1. The original complaint named the now-former Treasurer of the State of Rhode Island as a party to the suit. Pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure, the name of the current Treasurer is substituted as a party.

Alan M. Barnes, Cumberland, Robert D. Watt, Providence, for plaintiff.

Thomas A. Palombo, Elizabeth A. Wallace, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the Court on the defendants' petition for certiorari seeking review of a trial justice's denial of their motion for summary judgment. The trial justice stayed the proceedings pending our action on the petition. We issued the writ. For the reasons stated below, we quash the order denying summary judgment and remand the case for further proceedings consistent with this opinion.

The facts in this case are not in dispute. Sharon M. Albino (Albino), a University of Rhode Island (URI) student, reported that the plaintiff, Keith Ensey (plaintiff), kidnapped and raped her at gun point. Albino repeated her story at least six times to various persons, including her friends, medical personnel at the URI Health Services, a rape crisis counselor, and Rhode Island State Police Troopers and Detectives. Albino consistently identified her ex-boyfriend, the plaintiff, as the person who kidnapped and raped her. Additionally, Albino informed the Rhode Island State Police that a few days prior to the rape and kidnapping, her dormitory room had been vandalized and she believed the plaintiff to be responsible. Albino explained that she had previously engaged in a relationship with the plaintiff and that he continued to pursue her. A subsequent check on the plaintiff revealed that he possessed an active Rhode Island driver's license and that an outstanding arrest warrant had been issued for his apprehension on an unrelated charge.

After Albino made her report, the police visited the home of plaintiff's mother. She informed the police that her son lived in Chicago and had not been in Rhode Island when the crimes against Albino occurred. She supplied the police with plaintiff's home and work phone numbers. The police called plaintiff several times at these numbers but never reached him. Further, plaintiff's mother explained that the automobile which the police suspected the plaintiff utilized incident to accomplishment of the rape and kid-

napping had been repossessed two years earlier and that plaintiff currently drove a different automobile.

Accepting Albino's accusations over this contrary information, state police officers applied for an arrest warrant for plaintiff on these charges of kidnapping and rape. In applying for the arrest warrant, however, the officers did not inform the judge about the conversation with plaintiff's mother. Based on the information presented to him, a District Court judge issued the arrest warrant. Thereafter, the police released a verbal press statement which revealed plaintiff's identity, the charges, and the basic facts surrounding the investigation. Later, Ensey contacted an officer and stated that he had not left Chicago at any time, making it impossible for him to have committed the crimes against Albino. This information caused the police to engage in further interrogation of the complaining witness.

In the course of this interrogation of Albino, the police discovered that she fabricated the story against plaintiff to cloak a sexual affair in which she had been involved at a URI fraternity house. The police later charged Albino with filing a false police report. Upon learning of the fabrication of the charges, the police immediately applied to rescind the warrant for kidnapping and rape. The warrant had been outstanding for approximately ten hours. During that period of time, no law enforcement agency, local or otherwise, arrested or contacted plaintiff. The police never required plaintiff to return to Rhode Island.

The plaintiff subsequently filed suit against the Superintendent of the State Police, the General Treasurer of the State, ten unnamed officers of the State Police (all referred to as John Doe defendants), and Albino [2] in Providence County Superior Court. In his complaint, plaintiff alleged a violation of his Fourth and Fourteenth Amendment rights under the United States Constitution and comparable rights under article 1, sections 6 and 10 of the Rhode Island Constitution, his privacy rights under G.L.1956 § 9–1–28.1,

and negligence in the police investigation. The defendants made a motion for summary judgment, arguing that the doctrine of qualified immunity barred plaintiff's constitutional claims. The trial justice rejected defendants' qualified immunity argument and denied summary judgment on all claims, holding that defendants made a "rush to judgment" in obtaining the warrant and releasing information to the media. The trial justice reasoned that the police chose to believe "the hysterical young woman" rather than "the mother" and "ignored something that was shoved under their noses." Therefore, the trial justice stated, whether the police acted in "good faith" or with "reckless disregard" "[is] a factual dispute to be determined by a fact-finder." The trial justice, however, agreed to stay the proceedings pending review by this Court. We issued the writ of certiorari in order to review the interlocutory order of the trial justice.

### Standard of Review

■ When reviewing the denial of a motion for summary judgment, "we apply the same standard as the lower court." *Marchetti v. Parsons*, 638 A.2d 1047, 1049 (R.I. 1994). "After reviewing the pleadings, affidavits * * * and other [relevant documents] in the light most favorable to the nonmoving party, we must conclude whether the moving party is entitled to judgment as a matter of law." *Id.* (citing *Aetna Casualty & Surety Co. v. Vierra*, 619 A.2d 436, 437 (R.I.1993)). For the reasons set forth below, we quash the trial justice's denial of summary judgment.

### The Pleadings

In this case, there are only two named defendants. One defendant, the General Treasurer of the State of Rhode Island, is a nominal party who took no part in the activities upon which this action is based. The other defendant is the Superintendent of the Rhode Island State Police. The pleadings do not allege that the Superintendent made any decisions regarding the procurement of the

---

**2.** Albino is not a party to this appeal. Accordingly, we do not address the merits of plaintiff's

claims against her.

arrest warrant or the issuance of the press release. Moreover, the pleadings do not accuse him of negligence in supervising or directing the police officers under his command.

The body of the complaint indicates that certain unidentified state police officers, ranging in number from one to ten, obtained an arrest warrant after receiving a detailed report from a purported victim of sexual assault who claimed to have been raped at gun point. The complaint further indicates that one or more of those officers did communicate with the suspect's mother. It is the actions of these individual police officers upon which the complaint is based. However, none of these individual police officers is named as a defendant.

■ The complaint does refer to a number of unnamed state police officers who are characterized as John Does. Nevertheless, unless these John Doe defendants are named and served with process within a reasonable time after their identities become known, they may not be considered parties to the case. *Hall v. Insurance Company of North America,* 727 A.2d 667 (1999); *see also Wilson v. United States Government,* 23 F.3d 559, 563 (1st Cir.1994). Also, the naming of John Doe defendants will not toll the statute of limitations unless they are served with process within a reasonable time after they are identified or in the exercise of reasonable diligence could be identified. *Hall,* 727 A.2d at 670. The identities of the police officers who investigated the case and obtained the arrest warrant became known to plaintiff by reason of the defendants' answer to plaintiffs' interrogatories in March of 1994. Despite a three-year opportunity before the hearing on summary judgment, at no time did plaintiff attempt to amend his complaint to join the identified officers as parties defendant.

■ Allegations that non-party members of the state police may have violated either Fourth Amendment or privacy rights of plaintiff do not give rise to *respondeat superior* liability on the part of supervisors. *See Monell v. Department of Social Services of New York,* 436 U.S. 658, 691, 98 S.Ct.

2018, 2036, 56 L.Ed.2d 611, 636 (1978) (municipality cannot be held liable on a *respondeat superior* theory). An employer, whether a municipality or an officer of the government, is only responsible for the acts of a subordinate if the action that is alleged to be unlawful implements or executes a policy promulgated by the superior or the governing body of the entity against whom the complaint is made. *Id.* at 690, 98 S.Ct. at 2036–37, 56 L.Ed.2d at 635. Mere allegations, whether supported by affidavits or other pleadings, that officers who are not parties to the action may have violated plaintiff's rights cannot support the instant action against the Superintendent or the Treasurer. In respect to the non-party officers, the statute of limitations has long passed and, in absence of timely service of process, those unnamed officers cannot now be named as parties. *Hall,* 727 A.2d at 670; *see also Ricci v. Ricci,* 689 A.2d 1051, 1053 (R.I.1997) (delay of seven and a half months between filing complaint and service of process upon defendant held unreasonable); *Catone v. Multimedia Concepts, Inc.,* 483 A.2d 1081, 1084 (R.I.1984) (delay of thirteen months held unreasonable); *Simmons v.. State,* 462 A.2d 974, 975 (R.I.1983) (delay of three years held unreasonable); *Curtis v. Diversified Chemicals and Propellants Co.,* 440 A.2d 747, 749 (R.I.1982) (delays of four to seven months in serving various defendants held unreasonable); *Caprio v. Fanning & Dooley Construction Co.,* 104 R.I. 197, 200, 243 A.2d 738, 740 (1968) (delay of more than twelve months held unreasonable).

## Qualified Immunity

In their brief, defendants argue that the doctrine of qualified immunity, an immunity typically afforded to government officials on the federal level, bars plaintiff's claims. We are of the opinion that, in an appropriate case, the doctrine of qualified immunity might well be applied by this Court. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982) ("government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Pontbriand v. Sundlun,* 699 A.2d 856, 867 (R.I.1997) (a member of the executive branch *"may* be entitled to *some form * * * * of* qualified immunity for * * * acts performed in good faith"). In *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Supreme Court, in a per curiam opinion, made the following observation regarding qualified immunity:

> "Our cases establish that qualified immunity shields [law enforcement officers] from suit for damages if 'a reasonable officer could have believed [an arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.' *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity. *Ibid.* Moreover, because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Mitchell, supra,* 472 U.S., at 526, 105 S.Ct., at 2815; *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Anderson, supra,* 483 U.S., at 646, n. 6, 107 S.Ct., at 3042, n. 6." *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536, 116 L.Ed.2d at 595.

The Court went on further to admonish the Ninth Circuit Court of Appeals that the question of immunity should not be placed in the hands of the jury and should ordinarily be decided by the Court long before trial. *Hunter,* 502 U.S. at 227–28, 112 S.Ct. at 536–37, 116 L.Ed.2d at 595–96. Thus, the determination of qualified immunity on summary judgment has clearly been held to be appropriate. In the instant case, qualified immunity may have constituted an effective defense if the alleged tortfeasors were made parties to the instant action. In light of the pleadings in this case, however, we need not reach the issue of qualified immunity.

### Probable Cause

■ The defendants also raise the defense of probable cause, arguing that since probable cause existed to procure an arrest warrant and issue a press release, all claims against defendants require summary dismissal. It is true that if an officer has probable cause to obtain a warrant and takes appropriate steps to do so from a neutral magistrate, the officer is completely immune from liability. *See Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271, 280–81 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable * * * will the shield of immunity be lost ."). The facts in this case, particularly the detailed statement of the purported victim of sexual assault and kidnapping, is most persuasive on the issue of probable cause. The standard of probable cause either for arrest or the issuance of an arrest warrant has often been defined as those facts and circumstances known to the police (or magistrate) or of which they have reasonably trustworthy information that would cause a person of reasonable caution to believe that a crime has been committed and that the person under suspicion has committed it. *See, e.g., Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142, 145 (1964); *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630–31, 10 L.Ed.2d 726, 739 (1963); *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959); *State v. Correia,* 707 A.2d 1245, 1249 (R.I.1998); *State v. Brennan,* 627 A.2d 842, 849 (R.I.1993).

The plaintiff has raised the issue of failure to disclose to the District Court judge certain exculpatory alibi material relating to the suspect's residence in Chicago. In general, courts have held that in applying for a warrant it is not necessary to include all potentially exculpatory evidence in the supporting affidavit unless such exculpatory evidence

would defeat probable cause for the arrest. *See Forman v. Richmond Police Department,* 104 F.3d 950, 962 (7th Cir.1997); *United States v. Colkley,* 899 F.2d 297, 302–03 (4th Cir.1990); *see also Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978). However, in light of our holding with respect to the pleadings, we need not reach or decide the issue of probable cause since the only named defendants took no part in the action to procure the arrest warrant or to issue the press release.

On review of the denial of the defendants' motion for summary judgment, we are of the opinion that no genuine issues of material facts existed in the pleadings, affidavits, or otherwise and that the named defendants were entitled to judgment as a matter of law. In the absence of any active participation by the named defendants, summary judgment should have been granted in their favor. For the foregoing reasons, the defendant's petition for certiorari is granted and the order of the motion justice is quashed. The papers in the case are remanded to the Superior Court with our decision endorsed thereon and directions to enter summary judgment for the defendants.