**Jose CRUZ**

v.

**TOWN OF NORTH PROVIDENCE.**

**No. 2003–68–Appeal.**

Supreme Court of Rhode Island.

Nov. 6, 2003.

Edward G. Lawson, Jr., Pawtucket, for Plaintiff.

Todd D. White, Providence/Danielle R. Menard, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

**OPINION**

PER CURIAM.

Under the doctrine of *respondeat superior*, is a municipality liable when one of its police officers allegedly assaulted and battered a person arrested for driving a motor vehicle while intoxicated? Because the evidence introduced at trial failed to show that the officer's alleged misconduct was the product of a municipal practice or policy, we answer this question in the negative and affirm the judgment in favor of the municipality.

The plaintiff, alleged victim Jose Cruz (Cruz), appeals from a Superior Court judgment that entered as a matter of law in favor of defendant, the Town of North Providence (town). On December 5, 1997, Cruz met his friend Isabelo Marrero (Marrero) at the Lincoln Greyhound race track. After spending the day at the race track, Cruz and Marrero left at approximately 11:30 p.m. As Cruz was driving his car on Mineral Spring Avenue in the town, the police pulled him over to the side of the road after they observed him operating his vehicle in an erratic manner and with a missing tail light. After Cruz failed numerous field-sobriety tests, the police took him into custody and drove him to the North Providence police station. There, they administered two alcohol-breath tests, the results of which confirmed that he was intoxicated. Cruz alleged that, while he was in custody at the station, an unnamed North Providence officer struck him in the ear, causing him injuries.

On March 7, 2000, Cruz filed a complaint in Superior Court alleging that: (1) officers of the North Providence Police

Department arrested him for allegedly violating a motor-vehicle law; (2) after the arrest, a member of the town's police department physically abused him without any provocation on his part; and (3) the assault and battery constituted unwarranted and excessive physical abuse. Significantly, however, Cruz's complaint named only the town as a defendant. It requested compensatory and punitive damages, as well as attorney's fees and interest.

At trial, Cruz testified that while he was taking the alcohol-breath tests at the station, a police officer entered the room and said, "It's another immigrant." Cruz then told the officer, "I wasn't an immigrant * * *. I'm Puerto Rican." In response, according to Cruz, the officer told him to "shut up" and then hit him twice in his ear. Cruz apparently discovered the identity of this officer after filing suit, and later deposed him before trial. But he never sought to amend his complaint to add this officer as a defendant in the case.

After giving Cruz the alcohol-breath tests, the police placed him in a cell for several hours, and then released him. He testified that he saw Marrero waiting for him in the police station lobby, and he related to his friend what happened. Shortly thereafter, Cruz saw the officer who hit him walking through the lobby, prompting Marrero to ask the officer, "why [did] you hit him?" According to Cruz, the officer then told his friend, "Shut up, [or] I hit you too," as he walked away.

After a taxicab picked up Cruz and Marrero at the police station, Cruz obtained medical treatment at Memorial Hospital in Pawtucket because his ear was swollen. He also testified that two other doctors treated him for his ear injury after the incident. He explained that he experienced a great deal of pain and dizziness as a result of his injuries. On cross-examination, however, he admitted that he did not notify anyone at the police department about the incident, nor did he file any complaint with the police.

At the close of Cruz's case, the trial justice granted the town's motion for judgment as a matter of law. In doing so, the trial justice stated:

"This would be a valid Complaint and your evidence would comply with the Complaint if you had taken the trouble to sue an individual, even if you had sued a John Doe, which happens frequently in this Court when you don't know the names of the alleged defendants * * *.

* * *

"All we have here is Mr. Cruz testifying that he was arrested, charged, and during that arrest and charging procedure, some officer assaulted him. That's what he says. I don't think that a public corporation like the Town of North Providence is any different than a private corporation. There's still got to be some duty on the part of the master to control those actions, and I don't see how a town can control the actions of an individual police officer or, for that matter, any other town employee who commits an intentional tort such as assault. The evidence at this stage, even giving the Plaintiff the benefit of all inferences that would be adverse, I can't see anything here that would permit me to allow this case to go on."

After Cruz appealed from the judgment that entered in favor of the town, a single justice of this Court ordered the parties to show cause why we should not resolve this case summarily. After considering their arguments, we conclude that they have not done so. Accordingly, we proceed to decide the appeal at this time.

At trial, Cruz failed to introduce any evidence that, when viewed in the light

most favorable to him, would support his claim that the town was responsible for the injuries he suffered as a result of the alleged assault by one of the town's police officers. As the trial justice noted, Cruz's complaint merely alleged an assault and battery, which, if proven, would constitute a direct intentional tort by the officer who struck him. Although Cruz attempted to establish liability against the town under the doctrine of respondeat superior, neither the complaint nor the evidence he introduced at trial supported that theory of recovery against the town.

An employer, such as a municipality, can be held liable for an employee's intentional tort committed against a third party only if the misconduct falls within the scope of employment. *See Drake v. Star Market Co.*, 526 A.2d 517, 519 (R.I. 1987) (citing *Labossiere v. Sousa*, 87 R.I. 450, 143 A.2d 285 (1958); and *Bryce v. Jackson Diners Corp.*, 80 R.I. 327, 96 A.2d 637 (1953)). Acts of police brutality, however, whether committed by one or more police officers, do not generally fall within the scope of their employment. *See Bryant v. Mullins*, 347 F.Supp. 1282, 1284 (W.D.Va.1972) ("[T]he use of excessive force by a police officer is not within the scope of his duty or employment."). *See also* D.E. Evins, *Municipal Liability for Personal Injuries Resulting from Police Officer's Use of Excessive Force in Performance of Duty*, 88 A.L.R.2d 1330 (1963) (collecting cases). Nevertheless, "[t]he doctrine of respondeat superior would hold the master liable when the nature of the employee's duty is such that '[his] performance would reasonably put the employer on notice that some force probably

may have to be used in executing it.' " *Drake*, 526 A.2d at 519 (quoting *Labossiere*, 87 R.I. at 453, 143 A.2d at 287).

To be sure, the nature of a police officer's work may require the use of "some force" from time to time when dealing with recalcitrant arrestees and others who attempt to interfere physically with the police while they are doing their job. But Cruz did not allege or prove that the officer who allegedly struck him at the police station did so pursuant to some policy or practice of the town or in a manner that was within the usual scope of his employment as a police officer. Nor did he allege or prove that the town was negligent in its hiring, training, supervision, or direction of the unnamed police officer who struck him.[1] Additionally, the evidence showed only that a police officer arrested Cruz, charged him with motor-vehicle offenses, and then brought him to the police station, where another officer struck him in the head without any justification for doing so. Thus, no evidence demonstrated that this conduct was consistent with a municipal practice or policy condoning such behavior. Indeed, there was no indication that the town even knew that this particular officer had any past history of assaulting suspects; much less did the evidence show that it encouraged or sanctioned such violent mistreatment of arrestees such as Cruz. With respect to Cruz's punitive damages claim, he did not offer any evidence showing that the town otherwise participated in, authorized, or ratified the actions of the police officer who allegedly struck the plaintiff. *See Reccko v.*

---

1. Even if Cruz had introduced some evidence to support a negligent-hiring, -training, or -supervision theory of liability—which he failed to do—we would not entertain such claims on the merits because he sought to raise these issues for the first time on this appeal. It is axiomatic that this Court will not consider an issue raised for the first time on appeal that was not properly presented before the trial court. *Miguel v. State*, 774 A.2d 19, 21 (R.I.2001) (per curiam) (quoting *State v. Breen*, 767 A.2d 50, 57 (R.I.2001)).

*Criss Cadillac Co.,* 610 A.2d 542, 545 (R.I. 1992).

In *Ensey v. Culhane,* 727 A.2d 687, 690 (R.I.1999), we held that ten unnamed state police officers were not proper parties in a suit against the superintendent of the state police because the plaintiff did not name and serve them with process after discovering their identities. In that case, a former girlfriend falsely accused the plaintiff of raping and kidnapping her. As a result of the girlfriend's accusations, the police had an arrest warrant issued against the plaintiff, along with a press statement that revealed the plaintiff's identity and the charges against him. *Id.* at 689. At the time the police obtained the warrant and issued the press statement, the plaintiff's mother had informed them that the plaintiff was living in Chicago and had not been in Rhode Island at the time of the alleged crimes. *Id.* at 688. Despite obtaining this information, the police did not divulge it to the judge who ultimately issued the warrant for the plaintiff's arrest. *Id.* at 689. In the course of their investigation, the police discovered that the plaintiff's girlfriend had fabricated her story. *Id.* Thereafter, the plaintiff filed suit against the superintendent of the state police and ten unnamed police officers, alleging a violation of his Fourth and Fourteenth Amendment rights under the United States Constitution, and negligence in the police investigation. *Id.* The defendants filed a motion for summary judgment and argued that the doctrine of qualified immunity barred the plaintiff's constitutional claims. *Id.* The trial justice rejected this argument and denied summary judgment. *Id.*

On review, this Court examined the pleadings as well as the qualified-immunity issue. *Id.* at 689–91. In examining the pleadings, we noted that the plaintiff's complaint referred to several unnamed state police officers. *Ensey,* 727 A.2d at 690. We determined that if the identities of the officers became known, they would not be considered parties to the action unless and until plaintiff named them as parties and then timely served them with process. *Id.* We also stated:

> "Allegations that non-party members of the state police may have violated either Fourth Amendment or privacy rights of plaintiff do not give rise to respondeat superior liability on the part of supervisors. * * * *An employer, whether a municipality or an officer of the government, is only responsible for the acts of a subordinate if the action that is alleged to be unlawful implements or executes a policy promulgated by the superior or the governing body of the entity against whom the complaint is made. * * * Mere allegations, whether supported by affidavits or other pleadings, that officers who are not parties to the action may have violated plaintiff's rights cannot support the instant action against the Superintendent or the Treasurer.*" *Id.* (Emphasis added.)

■ In *Ensey,* just as in this case, the statute of limitations had expired by the time the Superior Court decided the case, which prevented the plaintiff from joining the officers as party defendants. Thus, *Ensey* held that to proceed against a municipality or a government supervisor for the wrongful acts of one or more unnamed or non-party employees, the plaintiff must introduce evidence that the employee's alleged unlawful activity was in furtherance of a policy promulgated by the supervisor or the municipality. In this case, Cruz failed to introduce any such evidence. As noted previously, he produced evidence only that the police arrested him and charged him with motor-vehicle offenses and that one of the officers at the police

station physically abused him without any justification to do so. As such, this evidence was insufficient to subject the town to liability under a respondeat superior theory.

For these reasons, we hold that the trial justice properly granted the town's motion for judgment as a matter of law. Therefore, we affirm the judgment in favor of the town.