**POUTASI TAISE, Plaintiff,**

**v.**

**RAY NOA, TULELE LAOLAGI, MALIA LEIATO and DOES I through X, in their individual capacities, jointly and severally, Defendants.**

---

**RAY NOA, Counterclaimant and Cross-Claimant,**

**v.**

**POUTASI TAISE, aka AUKUSITINO, Counter-Defendant.**

**and**

**DOES I through X, Cross-Defendants.**

High Court of American Samoa
Trial Division

CA No. 25-05

August 16, 2005

Before RICHMOND, Associate Justice; SAGAPOLUTELE, Associate Judge; and SU`APAIA, Associate Judge.

Counsel: For Plaintiff, Sharron I. Rancourt
For Defendant Noa, Mark F. Ude

For Defendant Laolagi, Fiti A. Sunia and David Cassetty,
Assistant Attorney General
For Defendant Leiato, *Pro Se*

## Background

During the early morning hours of December 25, 2004, Plaintiff Poutasi Taise ("Taise") and another male were standing on a street corner in Fagatogo when the other male yelled at a passing police car. Defendant Officer Malia Leiato ("Officer Leiato"), an on-duty police officer, was driving the car. The two men fled towards Fagatogo village. Officer Leiato pursued the men into Fagatogo village, where Officer Leiato was joined by Defendant Officer Ray Noa ("Officer Noa"). Eventually, the two officers caught up to and apprehended the two suspects. Taise alleges that upon being apprehended, Officer Leiato handcuffed him and then forcefully banged his head against the hood of the police car. The officers then transported Taise to the police station. Once there, Taise alleges, Defendant Lieutenant Tulele Laolagi ("Lt. Laolagi") punched the still handcuffed Taise in the face several times, breaking his jaw and causing him to fall to the ground. Taise further alleges that once on the ground, Officer Noa began to kick him in the chest and back. As a result of this alleged beating, Taise was rendered unconscious and taken to the hospital with a broken jaw. He remained in the hospital for three days.

On April 5, 2005, Taise filed suit against all three police officers, alleging assault, battery, false imprisonment, intentional infliction of emotional distress, violations of his federal constitutional rights under 42 U.S.C. § 1983, and violations of the local constitution under Article I, Sections 2, 5 and 6 of the Revised Constitution of American Samoa. Then, on May 16, 2005, Defendant Lt. Laolagi filed a motion to dismiss, contending that this Court lacks subject matter jurisdiction over counts one, four, seven, ten and nineteen of the complaint and that Plaintiff failed to state a claim under counts thirteen and sixteen.

## Analysis

### I. Subject Matter Jurisdiction Over Counts One, Four, Seven, Ten and Nineteen

Counts one, four, seven, ten and nineteen allege that Lt. Laolagi committed the intentional torts of assault, battery, false imprisonment and intentional infliction of emotional distress. Lt. Laolagi claims that the Government Tort Liability Act ("GTLA")[1] specifically shields the American Samoa Government ("ASG") from civil suits on such causes of

---

[1] A.S.C.A. §§ 43.1202-12.

action. Lt. Laolagi cites A.S.C.A. § 43.1203(b)(5), which provides that ASG retains immunity on "any claim arising out of assault, battery [and] false imprisonment . . . ." Lt. Laolagi further asserts that § 43.1203(b)(5) not only protects ASG against suits, but also extends immunity to ASG employees.

Lt. Laolagi, however, fails to mention A.S.C.A. § 43.1211, which provides,

> The remedy by suit against the government . . . for damage . . . caused by . . . any employee of the government while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . .

■ The High Court has read this language to authorize suits against ASG employees if that employee was, when the alleged harm occurred, acting outside the scope of his or her employment. In *Tevaseu v. American Samoa Gov't*, 5 A.S.R.2d 10 (Trial Div. 1987), the plaintiff filed suit against both ASG and the individual police officers involved in a harm-causing incident. The police officers argued that their names should be stricken from the complaint because the GTLA offers immunity to individual ASG employees. *Id.* at 12. The Court disagreed, citing § 43.1211 and finding that "such immunity is available only in the case where the employee is 'acting within the scope of his office or employment.'" *Id.* In *Lutu v. American Samoa Gov't*, 7 A.S.R.2d 61 (Trial Div. 1988), an ASG bus driver struck and harmed a child while driving an ASG bus. The child, through her family, filed suit against ASG and included the bus driver as an additional defendant. ASG moved to strike the bus driver from the suit, alleging that the GTLA prohibits suits against ASG employees in such circumstances. *Id.* at 68. The Court again disagreed, finding that § 43.1211 "merely prohibits a claimant from recovering twice, not from suing the employee in the first place." *Id.* at 69. The Court further noted, "an individual government employee cannot remain a defendant once it is established that the wrongful conduct underlying the claim was committed within the scope of employment. Unless and until that is established, however, suit against the employee is fully available and nothing in § 43.1211(a) suggests otherwise." Therefore, in sum, it is established in this jurisdiction that suits against individual ASG employees are sanctioned as long as the employee was acting outside the scope of his or her employment at time of the incident.

The principle issue for us to determine, then, is whether at the time of the alleged beating Lt. Laolagi was acting outside the scope of his employment. If he was, then the suit against him may stand. If he was not, then it should be dismissed for lack of subject matter jurisdiction.

■ When a police officer uses excessive force in making an arrest, that officer is acting outside the scope of his or her employment and can, therefore, be held personally liable for his or her actions under § 43.1211. *See Cruz v. Town of North Providence*, 833 A.2d 1237, 1240 (R.I. 2003) ("Acts of police brutality, however, whether committed by one or more police officers, do not generally fall within the scope of employment."); *Richards v. Town of Eliot*, 780 A.2d 281, 292 (Me. 2001) ("If a police officer's conduct exceeds the scope of his discretion, he may lose the immunity. If the officer uses excessive force in execution of an arrest, such action is beyond the scope of the officer's discretion.") (internal citation omitted); *Bryant v Mullins*, 347 F. Supp. 1282, 1284 (W.D. Va. 1972) (finding that municipal corporations are not held liable for acts of excessive force by their police force because, among other things, "excessive force by a police officer is not within the scope of his duty or employment"); *Blackstone v. Quirino*, 309 F. Supp. 117, 130 (D. Maine 2004) (finding that "immunity is unavailable to the defendant police officer because excessive force is beyond the scope of an officer's discretion") (internal quotations omitted). *See also Blackman v. Cooper*, 280 N.W.2d 620, 622 (Mich. Ct. App. 1979) (finding that police officer who used excessive force upon the plaintiff "enjoys no such common-law freedom or immunity from tort liability").

■ Therefore, the ultimate question for us to decide is whether or not Lt. Laolagi was acting with excessive force[2] on the morning of December 25. Although this issue may ultimately need to be decided at trial on the merits in this case, we may nonetheless act as arbitrator of facts in the limited context of a motion to dismiss based on sovereign immunity. *See Gallagher v. Board of Trustees for the Univ. of Northern Colorado*, 54 P.3d 386, 395 (Colo. 2002) ("We hold that it is procedurally proper for a trial court to decide the question of scope of employment on a . . . motion to dismiss"). And, on a motion to dismiss, a court is required to accept

---

[2] Taise implies that a showing that Lt. Laolagi acted willfully or maliciously would be, by itself, sufficient for us to conclude that he was acting outside the scope of his employment. While many states have a provision in their local tort liability act allowing for such a conclusion, *see e.g., Martin v. Brady*, 802 A.2d 814, 818 (Conn. 2002), the GTLA lacks such a provision. Therefore, a simple finding that Lt. Laolagi was acting willfully and maliciously would not automatically strip him of immunity.

as true all allegations in the complaint and all reasonable inferences that can be drawn from that document, and to view them in the light most favorable to the non-moving party. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 374 N.7 (3rd Cir. 2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

 With the above principles in mind, we hold that if we are to accept as true all the allegations in Taise's complaint, Lt. Laolagi was acting with excessive force[3] and therefore, outside the scope of his employment. BLACK'S LAW DICTIONARY defines excessive force as "[u]nreasonable or unnecessary force under the circumstances." BLACK'S LAW DICTIONARY 604 (8th ed. 2004). Likewise, in the context of Fourth Amendment claims, excessive force is defined as a seizure that is "unreasonable under the circumstances." *Turner v. Mayor of Marion* County, 94 F. Supp. 2d 966, 993 (S.D. Ind. 2000).

According to the complaint in the present case, when Taise arrived at the police station he was handcuffed and already injured. And, then, without apparent provocation, Lt. Leolagi punched Taise in the mouth, causing the suspect to sustain a compound fracture of the jaw. Taise further alleges that the incident took place in the presence of other police officers. These facts, if true, are sufficient to make a preliminary finding of excessive force, for the limited purposes of this motion. At the time of the injury, Taise was handcuffed, injured, inside the police station and surrounded by several police officers. Under these circumstances, punching Taise in the jaw was an unreasonable use of force because the Lt. Laolagi, as a trained police officer and in the presence of other officers, should have been able to use a less crude method of subduing the suspect if he even needed subduing in the first place. Taise was without the use of his hands and a group of trained police officers should be able to control a single suspect without punching him in the face. Therefore, considering the circumstances, we find that the amount of force that Lt. Laolagi used was both unreasonable and unnecessary for purposes of this motion to dismiss.

Thus, in sum, we hold that because Lt. Laolagi was acting with excessive force, he was not acting within the scope of his employment and therefore § 43.1211 does not strip this Court of subject matter jurisdiction.

---

[3] We stress, again, that this finding is simply a preliminary finding for the limited purposes of this motion to dismiss.

## II. Plaintiff's Alleged Failure to State a Claim Under Counts Thirteen and Sixteen

In count thirteen, Taise alleges that Lt. Laolagi violated 42 U.S.C § 1983 by violating Taise's "substantive due process rights (with respect to liberty interests), and/or fundamental rights protected under the United States Constitution, Fourth Amendment, and/or Fifth Amendment and/or Eight Amendment." Lt. Laologi contends that Taise failed to state a claim in this count because nowhere in the count does Taise "assert that these specific federal provisions [of the federal constitution] are applicable to American Samoa."

■ We hold that under current liberal pleading standards, a plaintiff need not specifically assert in his complaint that a cited federal constitutional right is legally protected in American Samoa. At the pleading stage, the plaintiff's focus should be on making sufficient factual assertions, not a comprehensive and definitive outline of his legal theories. In fact, "a complaint need not [even] point to the appropriate statute or law in order to raise a claim for relief . . . ." *Tolle v. Carroll Touch Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992). And, additionally, "a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for the claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.'" *Id.* (*citing Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992)). Therefore, we hold that Taise's failure to specifically allege that cited provisions of the United States Constitution apply in American Samoa is not fatal to his claim.

In count sixteen, Taise asserts that "Lt. Laologi's actions were a breach of his duties to uphold the [sic] Article I Section (2) and/or Section (5) and/or Section (6) of the Revised Constitution of American Samoa . . . ." Lt. Laolagi asserts that to accept count sixteen, the Court would have to imply a constitutional right of action against him, something that is not expressly provided for in the text of the constitution.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court held that a federal cause of action exists under the Fourth Amendment of the federal constitution, regardless of the fact that the text never specially provided for such. *Id.* at 394. "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official . . . despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). And, although *Bivens* itself applies directly to only the federal constitution, many state courts have held that the *Bivens* rationale also authorizes causes of action for rights protected under their respective

state constitutions. *See Albertson's Inc. v. Ortiz*, 856 S.W.2d 836, 839 n.6 (Tex. Ct. App. 1993) (citing eight different states which have permitted *Bivens* causes of action under state constitutions). *See also Binette v. Sabo*, 710 A.2d 688 (Conn. 1988); *Brown v. New York*, 874 N.E.2d 1129 (N.Y. 1996); *Bott v. Deland*, 922 P.2d 732 (Utah 1996); *Walanski v. Morrison & Morrison*, 377 N.E.2d 242 (Ill. App. Ct. 1978); *Moresi v. State*, 567 So.2d 1081 (La. 1990); *Phillips v. Youth Dev. Program*, 459 N.E.2d 435 (Mass. 1983); *Corum v. Univ. of North Carolina*, 413 S.E.2d 276 (N.C. 1992); *Widgeon v. E. Shore Hosp. Ctr*, 479 A.2d 921 (Md. 1984); *Woodruff v. Bd. Of Trustees*, 319 S.E.2d 372 (W.Va. 1984).

In federal courts, a defendant can successfully argue that a *Bivens* action does not exist only by showing that (1) "special factors counseling hesitation" exist or (2) Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18. Lt. Laolagi has failed to demonstrate that either one of these factors is present in the current situation.

■ We see no reason to break course with the voluminous and settled precedent that stands before us. The United States Supreme Court and most state courts have found that the so-called 'constitutional-tort' is a valid cause of action. Lt. Laolagi has not convinced us to conclude otherwise. Thus, we hold that count sixteen, which alleges that Lt. Laolagi violated Taise's rights as protected by Revised Constitution of American Samoa, states a valid legal claim.

### Order

Lt. Laolagi's motion to dismiss is denied. It is so ordered.